Members of the panel, good morning. I'm Kevin Snyder of the Pacific Justice Institute for Appellate Plans. May it please the court. There are a number of points raised in our brief, and each merits the court's attention. But with the court's permission, I'd like to divide my argument first, discussing some exclusion of evidence issues. And then I'd like to turn my attention to two premises relating to religion by the lower court, which are legally problematic. The trial What does problematic mean? There's a question. Inerror. Inerror. Plain error? Plain error. That's what problematic is, all right. Okay. Perhaps poor word choice. They were inerror. The trial court excluded all but one of Plans' exhibits. One such category of exhibits were documents called Anthroposophy Worldwide. He found that they were not self-authenticating under the rules of evidence 9026 as periodicals. This is an error. We provided five samples for the record, starting on page 422 of these documents. A hundred years ago, more than a hundred years ago, the U.S. Supreme Court articulated what a periodical was in Houghton v. Payne. There are just four elements, but it's a publication at stated intervals. In this situation, if you looked at the face of these documents, they are numbered and they're dated. Also has to have numerous articles. And if you look at the left-hand column of these documents, there's a table of contents and each of the five editions has 12 articles. Are you going to make all your argument about authentic? That these are self-authenticating. Yeah. Are you going to make all your argument about that? Because the district court didn't just talk about self-authenticating. He talked about hearsay and he talked about relevancy. I mean, I'd like to go to relevancy. Betty Staley, the witness at trial, denied that the newsletters reflected the position of the, and I can't say that word, whatever, society worldwide. And that there is no position of that society worldwide. And why is it an abuse of discretion to suggest that these publications are irrelevant? Well, the, we presented evidence, and this was one of the few exhibits that was admitted that shows that anthroposophy does have publications, and that's part of the. Well, that's not the question, whether it has publications. The question is whether it's relevant. If the witness, which was your witness, says the newsletters don't even, they reflect the position, but there's no position, then why is it an abuse of discretion to say they're relevant? I would, I would offer that Staley was a, Betty Staley was a precipient witness, not an expert witness. So why should we take on faith anything that's printed in the publication issued by a society reflects the belief system or, or views of that society? Well, I think you look at the contents of it to determine if that is the case. A, a printed periodical, which we believe there's no question these are periodicals, and it was an error to say that they were not, a self, a periodical is self-authenticating, doesn't even need a witness. So her testimony. Well, I, fine, but we're, I think Judge Smith's question and my question is aimed at relevance. That it's self-authenticating doesn't establish that it's relevant. Well, again, one would have to look at the content of, of the articles. Well, if they don't represent the official stance of what relevance are they to the activities? Well, it says, it says on the face of these doc, of these documents that they're printed by. That doesn't make any difference where, who they're printed by or all of that. What makes a difference is if they're not the official stance of it, then what relevance are they? I guess the, I guess the answer is there, there's no evidence that they're not. That's, that's not good enough. Because when I'm looking at a district court's decision, I have to find that it's illogical, that it's implausible, that it's without support in the inferences. And he said these are irrelevant publications. And Betty Staley confirmed it to him. Yes, I mean, the, the issue is, are they, are they probative of whether or not anthroposophy is religious? That's, that's whether or not they're relevant. That's the initial question. Our position is the, the articles do speak to things that are religious. And as such, they are, are probative and they're relevant. Let's go to hearsay. Okay. Can you make a blanket argument about these publications as it relates to hearsay? I think the, our, our. Don't you have to give me a statement in the publication so I can determine that what you're offering is or is not hearsay? The, the judge, Judge Damorell, just gave a blanket decision on that category. Well, I understand that. But I guess, again, I'm back to what do I do? Here's a district judge who gave no statement. I didn't know why you were offering it. I didn't know what was in there. And certainly, statements which constitute guiding tenets of anthropology would be offered for the truth of the matter asserted. So therefore, I didn't know why I could say he was illogical or implausible by saying these are out because of hearsay. Well, for one thing, the, the, we did put in the record the, the samples of the, of the articles. And those, so those, so you could look at those samples and determine whether or not they were hearsay. We're saying that they were. Hearsay as to what? I mean, part of what confuses me here is we've got two steps. One is truth of the matter asserted. And, and, and what, and it shouldn't be taken to mean, is that philosophy or, or the expression there the actual truth? But you've also got, and so I'm not, I'm not saying it can be rejected on that ground. But you've also got your implicit assertion, which we just dealt with, that statements contained in the publication reflect the belief system of the organization. And as to that, it seems to me you are asserting it for the truth. That is, that it wouldn't be in the publication if it didn't reflect the, the value system. And I don't know how you get around that problem. I would say that that's almost, that's almost our position, but not quite. What it is, is that we're saying that these statements in these articles are of a religious nature. Well, you're saying they're probative of what the position of the organization is. You're not, you're not saying that they prove what they are. But that is one part of evidence as to what the, the statements of the organization are probative of what the position is. Yes, they're probative of what, of, of, they're probative of what anthroposophy is. But they're not asserted to show that, that, for example, that reincarnation is the truth of that, that statement. Well, they're asserted to show the belief of the author of that article. Yes. But you still got the connection between moving from the author to whatever it is we're describing as the value system of the religion, which isn't necessarily coterminous with the author. I mean, it may be that the Pope can speak for the Catholic Church. But I, I don't see anything that makes the author of these articles the Pope. Yeah, again, I would, I would point the Court to the, to the articles and bylaws that were admitted into evidence. And it does. What would you say that we don't have a dogma? There's not an established, you don't have to believe in a particular system. You, you, you don't, yes, you, you can have a system that incorporates a lot of different beliefs. That's, that's Unitarianism. That's a religion. And indeed, it's, it's fascinating that the arguments that they're putting forward, that this is just a philosophical non-sectarian religion, or, or belief system, is the same ones that, that the commissioner of the INS put forward to, to deny them religious worker status. So it seems like they can't have it both, both ways in this regard. Well, were they denied religious worker status? They were denied religious worker status by the INS because, again, they said, well, they're a philosophy, they're non-sectarian. It's all arguments that they're bringing forward now. And the, and the courts, both courts rejected that position. And those, those cases are the Lindberg versus INS and Solitain versus INS. The, the other, the other issue is the, the books and publications, the writings and the lectures of Rudolf Steiner. Some of these were more than 20 years old, and they would, again, speak, beat the hearsay rule, because they're ancient documents. However, isn't the proper question that we're really talking about here is, were the books themselves in a place where, if authentic, they would have likely been? Isn't that the question that was never answered? I don't, I don't believe so. Was there ever a witness called to testify that he or she checked the books out of the library, that they bought them in a manner to suggest they were genuine? As a, the answer is, is that he did have some, some discussion about the books, and some of them she had read and some of them she had not. However, one does not, that was one of the errors, is that there was a, the, the court believed you needed a, two things. You needed a witness to authenticate an ancient document, and that's not correct. And the other thing is that you have to have the original. He said, if you have a, the Merchant of Venice, Shakespeare's Merchant of Venice, or the New Testament, and he excluded the New Testament, you, you, you have to have the original. And that's, that's an error. So we don't, we don't believe that, that, that the construction of the rules of evidence were correct on that, on that count. Doesn't there have to be some evidence with regard to where the actual physical property came from? I mean, if I walk in and say to a witness, here's this, what is it, the fact that it bears the date more than 20 years ago doesn't necessarily make that an ancient document. It, it does. It has to have, of course, the three elements of, of an ancient, ancient document. We would say that, that if it's a, on a, part of it, part of these documents were taken from the Rudolf Steiner archive on the internet. And again, they, they are the repository for his works. So that's a place where you would expect to, to find them. And so in, in that respect, it does, it does meet that standard. The, the other, and so we believe that, that the, because they were over 20 years old and they did, we do believe they meet the standard of ancient documents rule, that the hearsay exception does not apply. The other two issues, if I can, if, with the Court's permission, turn to on religion, is the, the lower court said, I'm sorry, there are, there is, there are indicia of religion. There are three of them. The lower court decided that there were four. That is, that is an error. They decided that there was a, that it requires a super human controlling power. This Court has stated clearly under Alvarado that that's simply not the case. That changes the dynamics of, of the, of the trial when you have to use a proven element that's at the top of the list. That's not the law. Let me ask you this. Can you name me a case where the Supreme Court has declared that a group constitute a religion over that group's objection? There's no Supreme Court case. There is the, as you know, as the Court I'm sure is well aware, it's, it's the Malnick v. Yogi case. Well, even in Malnick, wasn't the Court merely addressing whether the activity at issue was religious? No, Your Honor. Just a minute. Just a minute. Let's, let's go to Malnick, if you don't believe that's true. It seems to me that in Malnick, the Court was addressing where the activity at issue was religious. I think, I believe you're, you're correct. But the judge... So whether something is a religion or not is really not the question. The question is, the ultimate question is whether the activity at issue is religious, isn't it? Yes. That's phase two of this trial, which we hadn't gotten to. As to Malnick, I would direct the Court's attention. There is language that says this is an unusual case, he says, because the school district vehemently denies that, that I think it's transcendental meditation is a religion. And so, but again, there is, there is no Supreme Court case directly on that. Well, but to go right to Malnick, if I look at Judge Adams' concurring opinion, he even suggests that concluding that a set of ideas constitutes a religion over the objection and protestation of the group constitutes a first and an expansion of precedent. Even he says that. Yes, I mean, there was, it was, he was writing on a blank slate in many, in many respects. But that was close to two decades ago. And I believe that you can't have a situation where a group can simply, as an affirmative defense, self-declare themselves not a religion and the courts say, well, that's non-justiciable. We don't have to look at that. The other, and I would like to reserve a little of my time, so if I may go on to the next question, and that is, Aaron, that was the lower court believed that there were, there were, was a dual definition of religion in the First Amendment. And by doing so, he makes the burden of proof more difficult for the plaintiff because he says it, says the government basically should have deference on issues of establishment clause. We believe that that is in error. And we believe it's important for this Court to reach those, those questions. Otherwise, if the Court does reverse and remand, the new judge, new trial court judge would have to, by this Court's silence, may believe that there are four indicia of religion and that there are, there are two definitions under the First Amendment for religion. And with that, I would like to cede the rest of my time for rebuttal. Thank you, Counsel. Good morning, Your Honors. May it please the Court. My name is Michelle Cannon. I'm here today to argue on behalf of the Sacramento City Unified School District, the appellee in this matter. I stand before you today to urge affirmance of the trial court's judgment in this case and to help finally conclude this case after 14 years and two bench trials. The district court got it right in this case. Plans failed to meet its burden of proof by failing to call sufficient witnesses and introduce sufficient evidence to support its burden of proving that anthroposophy is a religion for establishment clause purposes. If we would affirm that, would that necessarily end the case? It would end the case, Your Honor, because the Court and the parties agreed as early as 2005 that this case would be bifurcated so that we would first determine whether anthroposophy is a religion. And if the determination is that it is not, then there's no need to move on to the second phase of the case because there would be then no dispute that what's going on at the schools violates the establishment clause. Well, but just a minute. Hasn't the Supreme Court made clear that an activity promoting religion in general can still violate the establishment clause, even if it isn't tied specifically to an identifiable religion? Yes, it absolutely can. You would apply the Lemon Test. And if the primary effect is to promote any religion, then that could violate the establishment clause. Well, then, so why does it make any difference whether this is a religion? It seems to me that the district court made an error. And the error was that he felt like he had to determine whether this was a religion when the ultimate question was whether an activity promoting religion. Well, the district court's decision was based on the complaint in this matter, which states that anthroposophy is a religion and thus Waldorf methods violate the establishment clause. Well, my worry is that even if it is a religion, that's not enough. That we have to, after you determine whether it's a religion or not, the ultimate question is that it depends on an activity being linked, not whether it's a religion or not. That the clause, it's possible that a religion can be involved in a school and not even create an establishment violation. Well, that's an interesting point, because it goes back to the first time the Ninth Circuit heard this case, when Plan's position at that time was they don't dispute or take issue with any particular activity or part of the curriculum at the schools. Rather, it is the overall operation of these schools that violates the establishment clause based on anthroposophy. And that was the reason why the Ninth Circuit sent it back to the trial court the first time. Is there some agreement between the parties in this case that if it's not a religion, that's the end of the case? The parties agreed to that when the judge first brought up bifurcating the issues back in 2005. And you'll see, and we put it in our supplemental excerpts of record, that the joint pre-file statements that were submitted by counsel for both parties as a joint document agreed with that bifurcation and agreed that it was appropriate to first determine whether anthroposophy was a religion. But my worry about that is that it seems like the district court made a legal conclusion that the Plan's establishment clause could be maintained or defeated only with a favorable finding on the issue of whether this was a religion. And that's legal error to me. I mean, and if it's legal error, it seems to me that there's no way I can let that go, because even if it is, and they have waived it, I still, if the issue is one purely of law, it won't affect or rely on the factual record, it won't prejudice the parties, I still have to think about that. Well, I think to respond to that, I would suggest that the Court's order on the Rule 52c motion does not find that anthroposophy promotes all religion. And I would posit that if the Court had made that determination, in other words, if his decision had been, I can't tell if anthroposophy is a religion, but I can tell that what's going on promotes all religions, his decision may very well have been different, that that's not one of his findings and that's not what his decision was based on. Well, and I understand that. But when I look at Rule 52c, it seems to me that the Court can't even enter a judgment against a party or on a claim. Only, he can only enter the judgment under 52c if under controlling law, the claim must be maintained or defeated only with a favorable finding on that issue. And my worry about that is this, that whether it's religion or not, does not maintain or defeat this claim. And therefore, the 52c judgment isn't worth anything, or the judgment the district court gave under 52a, because it isn't maintained or defeated on whether it's religion, because the ultimate question isn't whether it's a religion or not. It depends on the activity being linked to one identified. It's the activity we have to think about. But, Justice Smith, there's nothing in the record that speaks to any activity that promotes religion in general. The record is 52a. Well, I think that's only because we had a great big hearing about religion rather than about what was necessary to be talked about. We should have been talking about whether there was an activity. I'm not sure how to respond to that other than the parties, including plans and including after the remand from the Ninth Circuit, specifically focused on the overarching anthroposophy as a religion or not, and was allowed to call whatever witnesses and introduce whatever exhibits it thought pertinent to prove that it violated the Establishment Clause. And it's never focused on a particular activity. There's nothing in the record about an activity of anthroposophy that may violate the Establishment Clause or not. That's simply not what the Court said. That's because it was bifurcated. I'm sorry? That's because it was bifurcated. That was to be the issue in the second half of the trial. Well, I respectfully disagree, because, for instance, if you are trying to prove anthroposophy violates the Establishment Clause, why wouldn't you bring in evidence, a witness or an exhibit, which shows here's an activity they do and we're going to prove how it's religious. Here's another activity they do, and you put together these pieces of evidence to show that this is a religion. They did not do that in this case. And that could have been done on a bifurcated trial. It simply wasn't done. Okay. Well, I looked at the third amended pretrial conference order. Their plans list in its points of law the issue, whether there's an excessive entanglement between Sacramento City and religion in general. Then I looked at what it is that ultimately makes this decision. And I'm still having a tough time understanding why I'm being pushed to suggest whether this is a religion or not, when the ultimate question has nothing to do with that. The ultimate question is not that, but it is whether there's an activity that would be involved in this school and create this Establishment Clause violation. Well, I think there's two things. There could be an activity, like in the Malnet case that you mentioned, where it's a specific activity that's found to be religious. And then there are also cases that focus on overall, such as in this case, is this movement or this organization or this philosophy a religion for Establishment Clause purposes? But even if a religion, it still has to be so ingrained itself that there's an activity, there's an entanglement on how the school is run, on what is done in this particular matter with the activity in order to make it an Establishment Clause violation. There are religions who can be involved in schools, but they never have the activity necessary to make the Establishment Clause violation. Even religion, even saying they're religion. I agree, but I guess what I would say again is that based on this record, they did not put forth any evidence that any activity promoted religion. And without that in the record, having had the opportunity to do so, how could we find now that there was clear error by the trial court? Well, the error is, in my book, that he said, and I quote, this is – well, I don't want to quote it because it was too long, but he was – his whole idea is establishing a religion makes a difference. And I can't find out where it does. I'm trying to find the law where it does. Well, and just by way of background, the judge made that decision with the parties because when we were looking at how we were going to try this case, everyone agreed that if anthroposophy is not a religion, then the curriculum, the classes being taught, the methods being used aren't going to be at issue. It was never Plan's position or the trial court's or anyone's that there was a particular activity that was religious and that may violate the Establishment Clause. It was always based on the overarching idea of whether anthroposophy was a religion. As I understand what you're saying, it's the only allegations by Plan were that the activities would be violative if anthroposophy was a religion, but nothing went on the school that would have led to religious activities if it weren't promoting anthroposophy's values. Yes, I agree with that. Yes. So you're saying you could start at either end, that if they didn't promote anthroposophy's values, you win, and if they do promote anthroposophy's values and they're not a religion, you win. Well, I don't know that that's what I'm saying, but I know that there are two different lines of cases, one in which there's a regular public school and they're doing something in that school and it's an activity and it's alleged to be a religious activity, such as the Pelosa case. I'm not asking about general abstract theories. I'm asking about, as applied to this case, the allegations and positions of your opponents and your allegations and positions, and is it correct or isn't it that under Plan's and I would ask Plan the same question, under their theory of this case, there would not be religious activities unless anthroposophy was a religion. And that, well, that's, I guess that poses a question of their position. As Judge Smith points out, you can have all kinds of religious activities, even though they're not promoted by any single religion. But in this case, particular case, is it the position of your opponents that the only reason for their complaint that there are religious activities is that anthroposophy is a religion? Yes, absolutely. And the record is replete with that. That's been their position from the beginning of this case in 1998, that you cannot separate anthroposophy from Waldorf methods and that anthroposophy is a religion. They've never focused on any particular activities. And as I've mentioned now, I don't want to be repetitive, but at the trial they didn't submit any evidence of any particular activities. Maybe it's a little bit answered by what they say, or maybe not. I mean, that may not be the end of it, but it certainly would help us at this stage in hearing their answer to that. Let me move on to a couple more points, unless you had other questions you wanted me to ask. Okay, thank you. Two things that Plans has brought to the attention to this Court for the first time. The first is this dual definition of religion, and we briefed this. But again, on this record, there was never a dispute about is there a dual definition of religion for free exercise versus establishment clause. And I would point out that the judge's final order in this case, the final decision, mentioned that there was a dual definition. But it was really an opposite here because it didn't affect his decision. He was working from the establishment clause and the standard that the parties had adopted. And so although he recognized a dual definition and cited two cases for that, whether there's a dual definition or not is not determinative in this case. It's also important to point out, in case it's not completely obvious, that Plans has submitted to you in its excerpts of record and briefs numerous documents, never considered by the trial court and not part of the trial record. And they interweave these documents that are new in its brief for the first time. Some of them are documents that were proposed but excluded from evidence. Many, though, are documents that were cited in a amicus brief that were never proposed for the trial court, never considered by the trial court. They simply aren't part of the record here. The record here consists of the testimony of the one witness called by Plans and four exhibits. And Plans' argument is that that evidence, that scant evidence, is enough to prove that anthroposophy is a religion. And as was mentioned when Plans' counsel was speaking, essentially they are seeking to have an organization or a philosophy be determined by this Court to be a religion, even though that organization, that movement, that philosophy absolutely outright rejects such a determination. And, in fact, their founding documents state that they shall engage in no sectarian activity, take no dogmatic stand, and their organization is open to everyone. Although in a different context, they appear to have laid claim to the religious worker exception for immigration purposes. Well, I'm glad you mentioned that because, really, it wasn't anthroposophy that laid claim to that. It's a movement called Camp Hill. And if you read that case closely, Camp Hill is a completely separate and distinct organization with a different purpose and mission. Specifically he identified himself as Christian or Christianizing. That was their whole point. It was to Christianize mentally handicapped folks. And the Court said that while that movement, Camp Hill, has its roots in anthroposophy, it's clearly separate from anthroposophy. There's no case in the United States that we've been able to find where anthroposophy has ever held itself out as a religion. It has local organizations that are organized always as 501c3, in fact, their own documents in this record are, as a nonprofit, not as a religious organization in any way. Ms. Staley testified that the group is open to nonbelievers and believers both, and that all different types of religions may be anthroposophists. And I believe she gave specific examples of Buddhists, Jewish, Christian, and agnostics. And so for this Court to make a determination that this can be a religion, when it allows for believers and nonbelievers to come together to study and consider what anthroposophy is, it would really be extraordinary to place the term of religion on such a group. And if I could give you a definition of anthroposophy that's in our record, I think it would be helpful. Literally translated from the Greek, it means the knowledge of human being. And it's most often defined as a philosophy or a method of inquiry for those who study it. The trial court concluded that it's more akin to a methodology or approach to learning as opposed to any religious doctrine or organized set of beliefs. Where did you just read from? I just read from the excerpts of record from the Court's decision at page 15, I believe, is what I noted. I thought I read this somewhere in here. Maybe it was the excluded part about promoting Jesus Christ. I think that was probably in a document that was not part of the record before the trial court. When you say record, you mean the admitted documents? Yes. I mean, we have the evidentiary issues. And if we would disagree with the district court's treatment of those, then it may be appropriate for us to take a look at the documents that were offered up. Is there anything in those documents that made the reference that Judge Reinhart referred to? There probably are because of the volume of the documents and the various writers and authors of those documents. What I would propose, what I would suggest is that if you find that there was clear error or an abuse of discretion, rather, in the exclusion of any of these documents, that the proper action then would be to remand to the trial court to consider those documents as part of this case, but not to consider the evidence for the first time on appeal and render a decision based on that. Do you really want the case to go longer? You started by telling us you wanted to bring it to an end. I don't. No. I would prefer this case to end once and for all. So do you want us to look at those documents or not? Well, if there's documents that you believe were excluded as an abuse of discretion, I do believe the correct thing is for it to be sent back to the trial court for the trial judge to review those documents. The other thing I just wanted to mention before my time is up, which it almost is, is there was a lot of discussion and there's a lot of time in the briefing spent on self-authenticating documents, relevance, hearsay. I want to make sure that it's crystal clear that there was absolutely no witness to introduce any of these documents. It was literally a matter of trial counsel wanting to give the judge a book and say, I'm presenting this into evidence for your consideration. It's self-authenticating as an ancient document. Please accept it. With no one to say where it came from, what it is, what parts of the book are relevant, what parts do you want the judge to turn to. And that's what happened in this case, and I believe the transcript reflects that, and that's why – part of why these documents were rejected. So while it may be true that ancient documents are self-authenticating and don't need a witness, you still need someone to say what's in there, why it's relevant, how it applies to this case. And that didn't – Can't a lawyer do that? Once it's in evidence, can't the lawyer – It's in evidence until someone says what this is, where it came from. There was no one to do that. That's a different question. You said there was no one to tell the judge where in the book he would find what says this is a religion. But I said, do you need somebody to say that if it's admissible as a book? Well, the two things are so tied together, whether it's admissible in the first place and then where you point out what part is relevant. For instance, they attempted to submit the Holy Bible into evidence with no foundation or witness to describe why or how or in what way it would be useful to the court's determination. And that's the way this trial was run. And not only would it be impossible for a trial court to make a decision based on stacks of books and periodicals simply being presented in evidence, it would be impossible for defense counsel to cross-examine or defend the case in a situation like that. And the rules of evidence simply don't operate for treatises to be submitted into evidence without any witness, any expert, or anyone else to give testimony on it. Thank you. Thank you. Reading from the Court's opinion. Anthroposophy, quotes, Anthroposophy leads to results that can serve as a stimulus to spiritual life for every human being, whatever his religion. And he's citing evidence that was submitted into the record. In Levy-Weissman, the Supreme Court stated that there are heightened concerns with Establishment Clause cases when it is in the context of a K-12 school. And we believe that this Court should determine that if there are activities which promote religion of any kind, of any flavor, then that's the case. So your case is not dependent on whether Anthroposophy is a religion? Not no. Not necessarily. And the reason is, is if you never agreed to that along the way when you decided how the trial would be handled, you never advised the Court that unless Anthroposophy were a religion, you had no claim? I don't believe the prior counsel – I think prior counsel, or the trial counsel and the district's counsel probably did agree to that. But my argument is you can't take that back, can you? I think you can. And let me give you the basis for it. And that is that parties cannot agree, stipulate to a wrong standard of law. You can't say that there's four outs and an inning. And so we think that that's – No, no. This is a factual question as to what's going on in the school involved. If you said that there's nothing going on, there's no activity that is in any way religious other than the promotion of Anthroposophy, that's not stipulating to a proposition of law. That's describing what your complaint is with respect to what's happening at the school. We didn't – the trial counsel did not stipulate to the idea that there's nothing going on in the school. It's quite the opposite. I think that's what they wanted to get to phase two of the trial, to show the activities of that inn and the school, and that Anthroposophy in itself promotes religions in general. Then this bifurcation made no sense whatsoever. I'm sorry? Well, how did the bifurcation make any sense whatsoever if that commitment wasn't made by your predecessor? I think – well, that commitment was made. Which commitment? The one you just described? Yes. That it didn't matter whether Anthroposophy was a religion or not. They started with the premise that Anthroposophy is a religion, but they also said that it promotes religion in the public schools. And that would happen whether or not it was a religion. That's correct. Then what Judge Clifton just said is the bifurcation made no sense. It could well be that – I don't know. I mean, the judge decided – Didn't somebody tell that to the judge before we went through all of this? They may well have should have. Why can't we infer from the fact that there wasn't an objection to the bifurcation on that ground that, in fact, your predecessor did concede that there was no case if Anthroposophy, whatever it's called, is not a religion? I believe that what he did agree to was that you can go to and see that the activities of – in the school district are religious. Then you would have started at the other end of the bifurcation. You would have decided whether there was any activity. Well, maybe the trial court committed error and he should have started with Phase II and then gone to Phase III. Did you preserve that objection? Did you make that objection in the first instance? That – no, it was not made. Maybe we ought to just decide you all screwed this whole thing up and throw out the whole case. We would ask that the Court not do that. We believe that there was clear error. That's a temptation. Well, my – no, I have no other – I have no other questions.  Thank you, counsel. All right. Well, the morning's over. The case just argued will be submitted. The Court will stand in recess for the day. All rise.
judges: Reinhardt, Clifton, Smith